UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHELLE D. MASSA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:06-cv-207-JDT-TAB |
| ) | |
| ) | |
| I.C. SYSTEM, INC., a Minnesota ) | |
| Corporation, ) | |
| ) | |
| Defendant. ) | |

**Entry on Cross-Motions for Summary Judgment (Doc. Nos. 32, 39)**[1]

In this action Plaintiff alleges that Defendant sought to collect from her a debt that was subject to a bankruptcy and a collection fee that was not owed, all in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e and §1692f. Both parties seek summary judgment.

I.   **Background**

Defendant I.C. System, Inc. ("ICS") attempted to collect a consumer debt from Plaintiff Michelle D. Massa which debt was allegedly owed to Franciscan Surgery Center (the "Surgery Center"). Ms. Massa had filed a voluntary Chapter 13 bankruptcy petition on October 19, 2004, see *In re Massa*, Southern District of Indiana Bankruptcy

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

No. 04-19374-FJO-13.  The consumer debt she owed to the Surgery Center was listed on Schedule F of her petition.

In December 2005, the Surgery Center entered into an agreement with ICS, pursuant to which it agreed to place accounts with ICS for collection.  The agreement provides in part:

> "**You are responsible for providing accurate & up-to-date account information:** You must provide accurate information on each account and promptly report any payments you receive on accounts placed with us.  Place *only* amounts . . . that are validly due and owing by the debtor indicated.

(Premier Collect Agreement ¶ 4) (emphasis in original.)  One of the accounts placed with ICS was Ms. Massa's debt, which was placed on December 27, 2005.

On December 28, 2005, ICS sent Ms. Massa a debt collection letter, seeking payment of the debt allegedly owed to the Surgery Center, including $152.99 in "principal" and $76.50 in "Additional Client Charges" for a "Balance Due" of $229.49.  The agreement between Ms. Massa and the Surgery Center provided, under a paragraph regarding financial responsibility, that "[i]n the event the account is transferred to a Collection Agency/Attorney and a judgement is secured . . . collection costs will be added to the balance."  (Am. Compl. Ex. C.)

On January 3, 2006, one of ICS's debt collectors, Kristopher Arthur, called Ms. Massa and demanded that she pay the debt she had owed to the Surgery Center.  The parties dispute whether during this call Ms. Massa informed the debt collector that she

was in a pending bankruptcy proceeding. However, it is undisputed that she told him she was represented by an attorney, and provided her attorney's name, address, and telephone number. If a debt collector enters attorney contact information into the ICS computer system, then the system blocks the collector's further access to the account and the account is transferred to the attorney follow-up team. Pursuant to ICS's policies, Arthur entered the attorney's contact information into the computer and he no longer had access to the account as it was transferred to the attorney follow-up team.

ICS then sent a letter, dated January 4, 2006, to Ms. Massa's attorney, Steven J. Halbert, indicating that the Surgery Center had referred Massa's account to ICS for collection, that Halbert had been identified as her attorney, and that ICS was attempting to collect the debt. This letter stated that Massa allegedly owed a principal balance of $152.99 and "Additional Client Charges" in the amount of $76.50, for a balance due of $229.49. The letter requested Halbert to contact ICS to discuss resolution of the matter. Halbert sent the letter to Ms. Massa.

On January 6, 2006, Mr. Halbert contacted ICS by telephone and indicated that Ms. Massa was in bankruptcy. Under ICS's procedures, once it learns that an account is in bankruptcy, the account is closed and no further collection efforts are made. ICS obtained verification of the bankruptcy, then closed Ms. Massa's account due to the bankruptcy.

## II.     Discussion

Plaintiff alleges that Defendant attempted to collect a debt that was subject to a bankruptcy in violation of 15 U.S.C. § 1692e and attempted to collect an unauthorized collection fee in violation of 15 U.S.C. §§ 1692e, 1692f.  She moves for summary judgment in her favor as to Defendant's liability under the FDCPA.  Though ICS claims that it did not violate the FDCPA, with the exception of the letter sent to Plaintiff's attorney, it does not develop such an argument.  And it is clear that the basis for its summary judgment motion (with the exception noted) is that the bona fide error defense shields it from liability.

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When deciding cross-motions for summary judgment, the court construes the facts and inferences therefrom "in favor of the party against whom the motion under consideration is made."  *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006).  It is undisputed that Ms. Massa's debt was a consumer debt, incurred primarily for personal purposes, that ICS is a debt collector, and, therefore, that the FDCPA applies.

A debt collector who demands payment from a debtor while the debtor is in bankruptcy violates the FDCPA which prohibits the making of a "false representation of the character, amount, or legal status of any debt."  *Ross v. RJM Acquisitions Funding*

*LLC*, 480 F.3d 493, 495 (7th Cir. 2007) (quoting 15 U.S.C. § 1692e(2)(A)); *see also Randolph v. IMBS, Inc.,* 368 F.3d 726, 728 (7th Cir. 2004). ICS's three demands for payment of the debt to the Surgery Center were false in that no money was due because Ms. Massa previously had filed bankruptcy. The demands were made in the December 28 letter to Ms. Massa, the January 3 telephone call to her, and the January 4 letter to her attorney.

ICS contends, citing *Zaborac v. Phillips & Cohen Assocs.*, 330 F. Supp. 2d 962 (N.D. Ill. 2004), and *Young v. Manley*, No. 99 C 5569, 2000 WL 1280968 (N.D. Ill. Sept. 7, 2000), that the letter to the attorney could not constitute a FDCPA violation because communications between a debt collector and a debtor's attorney are not covered by the FDCPA.[2] Ms. Massa, however, cites authority which holds that communications from a debt collector to the debtor's attorney come within the broad definition of "communication" under the FDCPA. *See Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 233 (4th Cir. 2007) (concluding that "the FDCPA covers communications to a debtor's attorney"). In the court's view, the greater weight of the authority supports ICS's position.

Neither the Supreme Court nor the Seventh Circuit has directly addressed this question. The statutory language does not provide a clear answer either. The only

---

[2] *Zaborac* holds that communications in negotiation of settlement between a debt collector and the debtor's lawyer do not violate the FDCPA's prohibition of continued "collection of the debt" under § 1692g(b). 330 F. Supp. 2d at 966-67. *Young* holds that a debtor's attorney is not a "consumer" within the meaning of § 1692a(2) and the communication with the debtor's attorney did not constitute an indirect communication with the debtor. 2000 WL 1280968, at *3.

Court of Appeals to have addressed this question directly is the Fourth Circuit in *Sayyed*. In reaching its conclusion, the Fourth Circuit relied on the statutory language, specifically, § 1692a(2) which defines "communication" broadly, and its view that *Jenkins v. Heintz*, 514 U.S. 291 (1995), resolved the issue. *Sayyed*'s reasoning is not persuasive. First, the court understands Ms. Massa as alleging a violation of § 1692e(2)(A), which does not expressly involve a "communication" under the Act. And second, *Jenkins v. Heintz*, 514 U.S. 291 (1995), did not directly address whether a communication by a debt collector to a debtor's attorney is actionable under the FDCPA. While the case did involve a communication from the debt collector to the debtor's attorney, the specific issue presented was whether "debt collector" under the FDCPA applied to lawyers regularly engaged in debt collection through litigation. 514 U.S. at 292, 294.

Among the courts, including those in the Seventh Circuit, that have considered whether a debt collector's communications with a debtor's attorney are actionable under the FDCPA, the weight of authority holds that such communications are not actionable. *See*, *e.g.*, *Captain v. ARS Nat'l Servs., Inc.*, 2006 WL 18886177, at **2-4 (S.D. Ind. July 7, 2006); *Hill v. Mut. Hosp. Serv., Inc.*, 454 F. Supp. 2d 779, 782 (S.D. Ind. 2005); *Diesi v. Shapiro*, 330 F. Supp. 2d 1002, 1004 (C.D. Ill. 2004). This fits with the Second Circuit's view, albeit in dictum, "that alleged misrepresentations to *attorneys* for putative debtors cannot constitute violations of the FDCPA." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (emphasis in original). The Second Circuit found this view supported by the FDCPA's purpose – to protect consumers from deceptive and harassing debt

collection practices by debt collectors – and the court's treatment of FDCPA claims under the "least-sophisticated-consumer standard." *Id.* The *Kropelnicki* court concluded that it was reasonable to assume that the attorney would protect the consumer from the deceptive or harassing behavior. *Id.* at 127-28.

The court finds the greater weight of authority more persuasive than that offered by Ms. Massa. The FDCPA's primary purpose - to protect consumers from abusive, deceptive and unfair debt collection practices by debt collectors, 15 U.S.C. § 1692(e); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997), does not require that § 1692e (the section Ms. Massa alleges was violated) be applied to communications to the debtor's lawyer. Similar to the Second Circuit's standard, the Seventh Circuit views FDCPA claims under the unsophisticated consumer standard. *See McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). It makes little sense to apply this standard to communications sent to a debtor's attorney, who presumably is not unsophisticated, but well trained and educated. *See Captain*, 2006 WL 1886177, at *3. Therefore, the court finds that the January 4 letter to Attorney Halbert is not actionable as a FDCPA violation. As a result, only ICS's first two demands for payment of the debt were prohibited by § 1692e(2)(A).

Ms. Massa contends that ICS's demands for payment of "additional client charges" also was a false representation of the debt. She points to her agreement with the Surgery Center which allowed for collection charges only if, *inter alia*, a judgment is secured. The record in this case reveals that no judgment had been secured on this debt. ICS states that it is not charged with the knowledge of everything in its creditor's

files and thus argues that it is not liable for attempting to collect an allegedly illegal charge. ICS cites *Randolph* as support. *Randolph* states that debt collectors are not charged with the creditors' knowledge, 368 F.3d at 729; however, it also reiterates that "§ 1692e(2)(A) creates a strict-liability rule. Debt collectors may not make false claims, period." *Id.* at 730. Other Seventh Circuit decisions likewise indicate that "ignorance is no excuse" under § 1692e. *E.g.*, *Ross*, 480 F.3d at 495; *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). When ICS demanded payment of the additional client charges, the record shows it was not entitled to payment of such charges. Therefore, ICS's demand of payment of "Additional Client Charges" in its two collection letters falsely stated the amount of the debt in violation of § 1692e(2)(A). *See Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003) (holding debt collector's notice representing the amount of the debt to include costs and attorney's fees misrepresented the actual debt in violation of § 1692e). And the attempt to collect payment of the collection charges also is a violation of § 1692f which prohibits unfair or unconscionable means to attempt to collect any debt, including attempting to collect any amount, such as a fee, not expressly authorized by the agreement creating the debt. 15 U.S.C. § 1692f(1); *see Fields v. Wilber Law Firm*, 383 F.3d 562, 565-66 (7th Cir. 2004) (holding complaint alleging that collection letters attempted to collect unauthorized fees sufficiently stated a claim under § 1692f).

Having concluded that ICS has violated the FDCPA, the court considers whether it can avail itself of the bona fide error defense. The Act "provides a complete defense to a debt collector who 'shows by a preponderance of evidence that the violation was

not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" *Ross*, 480 F.3d at 496 (quoting 15 U.S.C. § 1692k(c)). ICS contends that it had procedures reasonably adapted to prevent bankrupt debts from getting into its computer system and to remove them promptly when such debts slipped through. It first points to its agreement with the Surgery Center that the Center would place "only amounts . . . that are validly due and owing by the debtor indicated." According to ICS, this language should be interpreted to conclude that the Surgery Center was not to send debts that were involved in bankruptcy or had been discharged in bankruptcy since such debts would not be valid or due and owing. ICS also points to its secondary procedures adopted to detect any bankrupt debts and remove them from ICS's collection efforts. Essentially, if the attorney follow-up team learns from the debtor's counsel that a debt is associated with a bankruptcy, the account is coded "bankrupt" in ICS's computer system and closed immediately.

Ms. Massa argues that ICS did not have reasonable procedures in place. She notes that ICS did not have to pull a credit report on her or use a bankruptcy search or scrub service such as Lexis-Nexis Banko. It did not have to do so. In *Hyman v. Tate*, 362 F.3d 965 (7th Cir. 2004), the Seventh Circuit rejected such a requirement. There the plaintiff argued that a debt collector could not simply rely on its client not to forward accounts in bankruptcy and instead should have checked bankruptcy records or used Banko to ensure the accounts forwarded for collection were not in bankruptcy. *Id.* at

968.  The court wrote: "the FDCPA does not require collectors to independently verify the validity of the debt to qualify for the 'bona fide error' defense."  *Id.*

ICS contends that *Ross* dictates that the bona fide error defense shields it from liability for attempting to collect a debt in bankruptcy.  In *Ross*, the court considered whether the debt collector's procedures were reasonably adapted to avoid dunning a debtor for a discharged debt.  RJM had purchased a number of accounts from Federated Department Stores, including a debt owed by Ross.  RJM and Federated had an agreement that "they have not and will not intentionally attempt to collect, or collect, debt that has been discharged in bankruptcy."  480 F.3d at 496.  However, Federated did not guarantee that the debts it sold to RJM contained no discharged debts.  *Id.*  RJM sent a dunning letter to the debtor, "Lisa Ross" (the name under which she incurred the debt) who subsequently filed bankruptcy as a "Delisa Ross" (her true name).  Ross's debts were discharged in bankruptcy.  Thereafter, RJM, not knowing that "Lisa Ross" was "Delisa Ross" mailed two dunning letters to the debtor.  *Id.*

The Seventh Circuit concluded that RJM had several reasonable procedures in place to minimize erroneously dunning a debtor for a discharged debt:

> an understanding with the firms that sell it debts for collection that they would not knowingly sell RJM a discharged debt and that they would notify RJM if after forwarding a debt they discovered that it had been discharged or had otherwise become uncollectable; RJM's bankruptcy search (actually done for it by another firm); Plaza's promise to notify RJM if it received a notice of discharge;[3] and RJM's prompt cessation of any attempt to collect a debt upon notification that it had been discharged.

---

[3]  Plaza was an RJM affiliate retained to collect the debt.  *Id.* at 496.

*Ross*, 480 F.3d at 497-98.  Indeed, the court held that under *Hyman v. Tate*, "the first and fourth are enough to discharge the duty of reasonableness. . . ."  *Id.*

The present record does not support the grant of summary judgment in favor of ICS on the basis of the bona fide error defense.  Significantly, ICS bears the burden of proving this affirmative defense.  15 U.S.C. § 1692k(c) ("[a] debt collector may not be held liable [under the FDCPA] if the debt collector shows by a preponderance of the evidence. . . ."); *see Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 536 (7th Cir. 2005).  The parties dispute when ICS was informed that Ms. Massa had filed bankruptcy.  If Ms. Massa is credited, then she told Mr. Arthur during the January 3 telephone call that she had filed for bankruptcy.  Though ICS argues it had procedures in place to immediately cease collection efforts on bankrupt accounts, it nonetheless sought to collect on Ms. Massa's debt in the January 4 letter to her counsel.  While sending this letter to Ms. Massa's attorney may not establish an independent violation of the FDCPA, see discussion *supra*, the sending of this letter supports a reasonable inference that ICS intended to continue its collection efforts despite its knowledge of Ms. Massa's bankruptcy.

ICS asserts that it was entitled to determine whether Mr. Halbert represented Ms. Massa and whether the debt was in bankruptcy.  While this may be correct, a trier of fact could find that the January 4 letter went further than that.  The letter itself states:

> Our client . . . has referred this delinquent account to us for collection efforts.  One of the next steps our office will take is to submit to national credit reporting agency that this balance has been placed with [us] for collection.

> Please contact us to discuss resolution of this matter.  Unless you respond
> to this request for confirmation, I will assume you do not represent
> Michelle D Massa who will be contacted directly.

(Compl. Ex. B.)  Any uncertainty may be resolved by the following language: "We are a debt collector attempting to collect a debt[.]"  (*Id.*)  This form letter says nothing about a claimed bankruptcy.  Instead, it states that ICS is "attempting to collect a debt" and that unless the attorney responds to the letter, Ms. Massa "will be contacted directly."  This suggests that if the attorney failed to respond, then ICS would contact Ms. Massa again in an attempt to collect the debt – a debt that, according to Ms. Massa, she had told ICS was in bankruptcy.  Thus, the record does not require a finding that  ICS promptly ceased collection efforts upon being informed that the debt was in bankruptcy.  This alone is a genuine issue of material fact that precludes entry of summary judgment for either party.

Furthermore, it is unclear that ICS and the Surgery Center's agreement required that the Center not send ICS debts involved in bankruptcy.  As Ms. Massa points out, the agreement does not expressly prohibit the Surgery Center from sending ICS accounts which are subject to bankruptcy.  While ICS argues that the only reasonable interpretation of the agreement is that the Surgery Center was not to send such debts, the "Place *only* amounts . . . that are validly due and owing by the debtor indicated" language may be subject to other reasonable interpretations.  ICS may have evidence to support a finding that this is how it interpreted the language and that the Surgery Center had this same interpretation, but ICS has not offered any at this stage of the proceedings.

With respect to the claim based on the demand for payment of the additional client charges, the outcome is different. Ms. Massa asserts that ICS should not have attempted to collect the additional client charges until it had first received verification from the Surgery Center that it was allowed to charge this fee. Her position is similar to that taken in *Hyman* where the plaintiff argued that the debt collector could not simply rely on the creditor not to forward accounts in bankruptcy, but had to take a more proactive approach to ensure that the accounts forwarded to it were not in bankruptcy. The court held that the debt collector was not required to independently verify that the accounts forwarded were not in bankruptcy. *Hyman*, 362 F.3d at 968 ("the FDCPA does not require collectors to independently verify the validity of the debt to qualify for the 'bona fide error' defense").

As in *Hyman*, ICS was not required to independently verify the validity of the debt, specifically including the additional client charges. Instead, ICS had adequate procedures reasonably adapted to avoid demanding payment of an additional collection fee not allowed under a contract. The agreement provided that the Surgery Center was responsible for providing accurate account information and was to "place **only** amounts . . . that are validly due and owing". ICS was entitled to rely on the Surgery Center's statement as to the amount of the debt owed by Ms. Massa and that the entire amount, including the additional client charges, was validly due and owing. While there is some evidence that ICS may have had a concern over whether the Surgery Center had a basis for including the fifty percent fee with the account and did not have any proof from the Surgery Center that it was entitled to the fee, these facts do not reasonably suggest

13

that ICS's attempt to collect the unauthorized fee was intentional. In addition, the initial debt collection letter dated advised Ms. Massa that if she notified ICS within thirty day that she disputed the validity of the debt or any portion thereof, that it would obtain verification of her debt and mail it to her. Thus, ICS's initial collection letter informed Ms. Massa of what she should do if she disputed any portion of the debt.

ICS has shown that its demand of payment of the additional client charges was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error. Therefore, the bona fide error defense shields it from liability on the claims arising out of it attempt to collect an unauthorized collection fee.

As should be evident from the previous discussion, the court **declines** to strike the Defendant's cross-motion for summary judgment as untimely, as urged by Ms. Massa. A district court has wide discretion in deciding whether to consider an untimely motion for summary judgment. *See, e.g.*, *Jones v. Coleman Co.*, 39 F.3d 749, 754-55 (7th Cir. 1994). In seeking summary judgment the Plaintiff contended that ICS had no evidence to support the bona fide error defense. In its response, ICS offered evidence to show that there is no genuine issue and that it is entitled to a partial judgment as a matter of law on the basis of that defense. Thus, it is appropriate to consider ICS's cross-motion even though it may be untimely. This furthers the interest of deciding an action on the merits.

**III.     Conclusion**

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. No. 32) is **DENIED** and the Defendant's Cross-Motion for Summary Judgment (Doc. No. 39) is **DENIED IN PART** and **GRANTED IN PART**.  Because of the interrelatedness of all claims, judgment will not be entered until disposition of the remaining claims.

ALL OF WHICH IS ENTERED this 10th day of August 2007.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge Tim A. Baker

Bonnie Christine Dragotto
GOMOLINSKI & PHILIPPS LTD
bdragotto@aol.com

Steven James Halbert
shalbertlaw@aol.com

David J. Philipps
GOMOLINSKI & PHILIPPS LTD
davephilipps@aol.com

Mary E. Philipps
GOMOLINSKI & PHILIPPS, LTD
mephilipps@aol.com

Peter A. Velde
KIGHTLINGER & GRAY
pvelde@k-glaw.com