UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHELLE D. MASSA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:06-cv-207-JDT-TAB |
| ) | |
| ) | |
| I.C. SYSTEM, INC., a Minnesota ) | |
| Corporation, ) | |
| ) | |
| Defendant. ) | |

**Entry on Plaintiff's Motion to Reconsider Summary Judgment (Doc. No. 62)**[1]

Plaintiff Michelle D. Massa alleges that Defendant I.C. System, Inc. ("ICS") sought to collect from her a debt that was subject to a bankruptcy and attempted to collect a fee not owed in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e and 1692f.  Ms. Massa seeks reconsideration of the court's rulings on the parties' cross-motions for summary judgment.  She contends that the court should have granted summary judgment for her because ICS failed to offer sufficient evidence to support its bona fide error defense.  She also contends that the court's decision should be changed based on recent Seventh Circuit case law and newly discovered evidence.  Ms. Massa makes a persuasive case for reconsideration of some of the summary judgment rulings.

---

[1]  This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

**I.  Discussion**

A familiarity with the court's Entry on Cross-Motions for Summary Judgment of August 9, 2007, is presumed.  The discussion of the facts is limited to that which is necessary to provide context in this Entry.

The Federal Rules of Civil Procedure contain no rule expressly authorizing reconsideration of nondispositive rulings on summary judgment motions.  However, district courts have broad authority to reconsider even sua sponte their decisions prior to judgment.  *See, e.g.*, *Peirick v. Ind. Univ.-Purdue Univ.*, 510 F.3d 681, 694 n.5 (7th Cir. 2007).  Such is the case here.

On reconsideration, Ms. Massa first contends that ICS, not the Franciscan Surgery Center ("Franciscan" or "Surgery Center"), added the 50% collection charge.  For support, she cites the deposition testimony of Stephen J. Wheatley, an administrator at Franciscan, who was added to ICS's witness list after the court's summary judgment entry, and Robin A. Ellis, also a Franciscan employee.  According to Ms. Massa, both Mr. Wheatley and Ms. Ellis testified that the collection charge was added not by Franciscan, but by ICS.  Ms. Massa thus contends that ICS can no longer claim that it relied on Franciscan regarding the amount of the debt.

Mr. Wheatley did not testify that the collection fee was added by ICS, however.  He testified that he had no idea why a collection fee was added to the debt ICS tried to collect from Ms. Massa.  (Wheatley Dep. at 8.)  He said that the additional client charge was not Franciscan's and that Franciscan would not have told ICS to add the charge.

(*Id.* at 9.) Mr. Wheatley also testified that when Metro Assets went out of business, it returned to Franciscan the entire packet of files it had received from Franciscan. (*Id.* at 4-5, 11-12.) Franciscan then placed those files with ICS for collection, without any prior review by Franciscan. Mr. Wheatley's testimony disclosed that he had no personal knowledge of what information was contained in the packet of files first returned to Franciscan by Metro Assets and then placed by Franciscan with ICS. (*Id.* at 12.) His testimony leaves unanswered the question of who added the collection fee.

Ms. Ellis, who works in coding and billing for Franciscan, testified that under the patient financial responsibility agreements, a collection fee could be added only in the event of a judgment. (Ellis Dep. 26.) She also testified that Franciscan did "not add collection fees to our account balances" and that ICS would have added the fee to Ms. Massa's account. (*Id.* at 13-14.) But Ms. Ellis also stated that she did not know what information was in the packet of accounts that Metro Assets returned to Franciscan. (*Id.* at 25.)

The collection fee could have been added by Metro Assets — Franciscan did not review the packets before passing them along to ICS. If the fee was added before the accounts were placed with ICS, then ICS received from Franciscan information indicating that Ms. Massa's account included a collection charge, even though Franciscan itself did not add the problematic fee. The record simply does not establish that ICS added the "additional client charges."[2]

---

[2] Other evidence suggests that the fee was added before the account reached ICS.
(continued...)

Moreover, in the summary judgment briefing, Ms. Massa did not take the position that ICS itself added the additional client charge. Instead, she argued that ICS sought to collect the charge without having first received from Franciscan any proof that Franciscan had a basis to collect the charge. (Pl.'s Mem. Law Supp. Mot. Summ. J. 4, 9; see also Pl.'s Resp. Def.'s Mot. Summ. J. 11 (arguing that "ICS knew that *Franciscan* was seeking collection of not only an amount of 'principal' but also 'additional client charges' of 50% of the debt") (emphasis added)). Plaintiff's attempt to make a different argument now – based on facts not supported by the evidence of record – fails. Her newly uncovered evidence regarding who added (or didn't add) the collection charge does not warrant reconsideration of the court's prior ruling with respect to the additional client charges.

Ms. Massa's second ground for reconsideration is based on a recent development in Seventh Circuit case law. When the court issued its summary judgment entry, neither the Supreme Court nor the Seventh Circuit had addressed whether communications to a debtor's attorney could constitute a violation of the FDCPA. The court followed the weight of authority and concluded that the January 4 letter to Mr. Halbert was not actionable as a FDCPA violation. Since then, the Seventh Circuit issued its decision in *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774-75

---

[2](...continued)
ICS expressed concern to Franciscan as to whether Franciscan had any basis for adding the collection charge. (Johnson Dep. 19.) When asked "do you have any proof from Franciscan at any time that *they* had a basis for this fifty percent fee?" Susan Johnson, ICS's legal affairs manager, answered that she had none. (*Id.*) (emphasis added). If ICS added the charge, it would have had no reason to ask Franciscan whether Franciscan had a basis for the charge.

4

(7th Cir. 2007), holding that a debt collector's false representation to a consumer's lawyer may violate the FDCPA.  With respect to allegedly deceptive communications, the court concluded that "a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable" under the FDCPA.  *Evory*, 505 F.3d at 775.  The court treated false representations differently, though, indicating that a "false claim of fact in a dunning letter may be as difficult for a lawyer to see through as a consumer."  *Id.*  As an example, the court identified a false claim of fact in a dunning letter.  The court concluded that a misrepresentation of the unpaid balance of the consumer's debt "would be actionable whether made to the consumer directly, or indirectly through his lawyer."  *Id.*

That is what happened here.  While Mr. Halbert would have known that Ms. Massa had filed bankruptcy, ICS misrepresented the amount of Ms. Massa's debt.  Mr. Halbert knew that Ms. Massa owed Franciscan $152 - that debt was listed on her bankruptcy schedule which he prepared.  However, there is no reason for him to have known whether the additional client charges also were due and owing.  Therefore, ICS's misrepresentation to Mr. Halbert that the additional client charges were due and owing is actionable as a violation of the FDCPA.  The court accordingly reconsiders its earlier ruling to the contrary and determines that this false representation in the January 4 letter to Attorney Halbert was prohibited by § 1692e(2)(A).  This reconsideration ultimately does not change much for this case, though.

5

ICS was entitled to rely on the statement of the amount of the debt placed with it by Franciscan – whether Franciscan or another entity had added the additional client charges. (See Entry on Cross-Mots. Summ. J. 13-14.) And the agreement between ICS and Franciscan provided that Franciscan was to provide accurate and up-to-date account information, and place only amounts "that are validly due and owing by the debtor." Thus, ICS is shielded by the bona fide error defense.

With respect to the demand for payment of a debt in bankruptcy made in the letter to Mr. Halbert, Mr. Halbert would have known without any investigation that no money was due because he knew that Ms. Massa had filed bankruptcy. Thus, under *Evory*, the claim based on the demand for payment of a debt in bankruptcy made to Mr. Halbert is not actionable. *See Evory*, 505 F.3d at 775.

Finally, Ms. Massa contends that ICS failed to discharge its summary judgment burden respecting its bona fide error defense to her FDCPA claim based on the attempt to collect a debt subject to bankruptcy. The court agrees with her. ICS argued that it had procedures reasonably adapted to prevent bankrupt debts from getting into its computer system and to remove them promptly if such debts slipped through. It relied on its agreement with Franciscan that the latter would place "only amounts . . . that are validly due and owing by the debtor indicated." According to ICS, this language should be interpreted to conclude that Franciscan was not to place debts that were involved in bankruptcy or had been discharged in bankruptcy. ICS also relied on its secondary procedures adopted to detect bankrupt debts and remove them from its collection efforts.

Taking the secondary procedures first, the court finds that it erred in its summary judgment entry. Ms. Massa asserted as a material fact, supported by appropriate citations to record evidence, that she had informed an ICS debt collector during a January 3, 2006, telephone call that she was in a pending Chapter 13 bankruptcy. (Pl.'s Statement Material Facts Not in Dispute ¶ 9.) The court mistakenly believed that there was a dispute of material fact over whether Ms. Massa informed the debt collector of her bankruptcy during this call, thinking ICS's position was that it was not informed of the bankruptcy until Mr. Halbert's January 6 telephone call to ICS. However, ICS had agreed that Ms. Massa informed it of her bankruptcy on January 3. (See Def.'s Mem. Law Opp'n Pl.'s Mot. Summ. J. & Supp. Def.'s Cross-Mot. Summ. J. 3, ¶ A.1.) Thus, the record does not support a finding that ICS promptly ceased collection efforts upon notification of Ms. Massa's bankruptcy. Instead, the very next day ICS sent a letter to Mr. Halbert in an attempt to collect the debt with Franciscan. The court indicated that the letter supported a reasonable inference that ICS intended to continue its collection efforts despite knowing of Ms. Massa's bankruptcy. (Entry 11-12.) On further reflection, however, the court finds that the unrefuted evidence goes beyond merely raising an inference. The evidence supports but one reasonable conclusion: ICS did not promptly cease its attempt to collect on the debt owed Franciscan upon notification of Ms. Massa's bankruptcy. This alone is sufficient to defeat the bona fide error defense and result in summary judgment for Ms. Massa.

But on reconsideration, the court further finds that ICS also falters on the whether it had an understanding with Franciscan that it would not place with ICS a bankrupt

debt.  Summary judgment originally should have been granted ICS because of a lack of evidence to support its own interpretation of "valid."  The court wrote:

> [T]he agreement does not expressly prohibit the Surgery Center from sending ICS accounts which are subject to bankruptcy.  While ICS argues that the only reasonable interpretation of the agreement is that the Surgery Center was not to send such debts, the "[p]lace ***only*** amounts . . . that are validly due and owing by the debtor indicated" language may be subject to other reasonable interpretations.  ICS may have evidence to support a finding that this is how it interpreted the language and that the Surgery Center had this same interpretation, but ICS has not offered any at this stage of the proceedings.

(Entry 12.)  The court erred in perceiving an issue of fact for trial.

While the language of the agreement may be open to more than one reasonable interpretation, the bona fide error defense is an affirmative defense on which ICS would bear the burden of proof at trial.  Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."  *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005); *see* Wright, Miller & Kane, 10B *Federal Practice and Procedure* § 2739 (West Group 1998) ("the party opposing the summary-judgment motion does not have the right to withhold evidence until trial").  It was ICS's burden at summary judgment to offer evidence to support its interpretation of the language, that is, that Franciscan and ICS both interpreted the language to mean that Franciscan would not place bankrupt accounts with ICS.  It offered none, so summary judgment should have been granted Ms. Massa on the bona fide error defense.

Furthermore, the evidence ICS offers now is insufficient to carry its burden. Even if the testimony from Susan Johnson of ICS establishes ICS's interpretation of the word "valid" in the agreement,[3] ICS has offered insufficient evidence to establish that Franciscan shared that interpretation.[4] That is, ICS has insufficient evidence of the parties' understanding that Franciscan would not place a bankrupt debt with ICS.

## II.     Conclusion

For the foregoing reasons, the Plaintiff's Motion to Reconsider Summary Judgment (Doc. No. 62) is **GRANTED IN PART**. The court finds that ICS's attempt to collect from Ms. Massa payment of a debt which was subject to bankruptcy violated the FDCPA, 15 U.S.C. § 1692e. The court further finds that ICS's attempt to collect an unauthorized collection fee also violated the FDCPA, 15 U.S.C. §§ 1692e, 1692f, but that the bona fide error defense of § 1692k(c) shields ICS from liability on these claims. Summary judgment will be entered in favor of Plaintiff and against Defendant.

---

[3] Plaintiff's counsel asked Ms. Johnson the following questions and she gave the following answers:
    Q.  Doesn't the terms of the IC agreement say you're only supposed to send us valid accounts?
    A.  That's correct.
    Q.  And you would agree with me that they, in fact, sent you a not valid account, right?
    A.  Right.
(Johnson Dep. 38-39.)

[4] Mr. Wheatley did testify that Franciscan has a policy against placing bankrupt accounts with a collection agency. (Wheatley Dep. 10.)

Entry of final judgment will await a determination of the amount of damages, costs and attorney's fees to be awarded Ms. Massa under § 1692k as a result of Defendant's failure to comply with the FDCPA.

This matter is **REFERRED** to the Magistrate Judge to establish a schedule for briefing on the appropriate amount of ICS's liability under § 1692k.

ALL OF WHICH IS ENTERED this 21st day of February 2008.

_____
John Daniel Tinder, Judge
Sitting by Designation

Copies to:

Magistrate Judge Tim A. Baker

Bonnie Christine Dragotto
GOMOLINSKI & PHILIPPS LTD
bdragotto@aol.com

Steven James Halbert
shalbertlaw@aol.com

David J. Philipps
GOMOLINSKI & PHILIPPS LTD
davephilipps@aol.com

Mary E. Philipps
GOMOLINSKI & PHILIPPS, LTD
mephilipps@aol.com

Peter A. Velde
KIGHTLINGER & GRAY
pvelde@k-glaw.com